UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN SMITH | ) | CIVIL ACTION NO.: 1:23-CV-11482 DLC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **LEAVE TO FILE GRANTED ON 6/3/2024** |
| | ) | |
| FORTIFY INSURANCE GROUP, | ) | |
| COURTNEY WILSON AND SUSAN WILSON, | ) | |
| Defendants. | ) | |

<u>**REVISED AMENDED COMPLAINT AND JURY DEMAND**</u>

**INTRODUCTION**

The Plaintiff, Jonathan Smith ("Smith"), brings this Complaint and seeks damages against his former employer, Fortify Insurance Group, Inc. (the "Company" or "FIG"), its President and Founder, Courtney Wilson, and its Chief Executive Officer, Susan Wilson (collectively, "Defendants"), for breach of the Massachusetts Wage Act for failure to pay earned wages and commissions; for retaliation under the Massachusetts Wage Act; for violation of the Massachusetts Independent Contractor Law; for violation of the Massachusetts Minimum Wage Act; for Breach of Contract, for Breach of the Implied Covenant of Fair Dealing, for violations of the Fair Labor Standards Act of 1938, As Amended (the "FLSA" or the "Act"); for unjust enrichment;  for an accounting of commissions due to Smith; and for failure to keep proper payroll records under Massachusetts law.

<u>**PARTIES**</u>

1.    Plaintiff, Jonathan Smith, is a citizen of the Commonwealth of Massachusetts who resides at 21 Dunbarton Road, Quincy, Norfolk County,

Massachusetts 02170.

2.      Defendant, Fortify Insurance Group, Inc., is a Connecticut for profit corporation with a principal place of business at 24 Punch Bowl Drive, Westport, Fairfield County, Connecticut 06851.

3.      Defendant, Courtney Wilson, is, and at all times relevant has been, the Founder and President of the Company. He is a citizen of the State of Connecticut, and his residence is 24 Punch Bowl Drive, Westport, Fairfield County, Connecticut 06851.

4.      Defendant, Susan Wilson, is, and at all times relevant has been, the Chief Executive Officer of the Company. She is a citizen of the State of Connecticut, and her residence is 24 Punch Bowl Drive, Westport, Fairfield County, Connecticut 06851.

5.      At all times relevant, Courtney Wilson has managed all aspects of the Company's business including overseeing the payment of all wages and commissions due to the Company's employees. He is responsible for ensuring employees are paid on time and in full and has the authority and controls the day-to-day operations of the Company. Accordingly, Courtney Wilson is an employer of the Company's employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

6.      At all times relevant, Susan Wilson has managed all aspects of the Company's finances and payroll including overseeing the payment of all wages and commissions due to the Company's employees. She is responsible for ensuring employees are paid on time and in full and has the authority and controls the day-to-day operations of the Company. Accordingly, Susan Wilson is an employer of the Company's employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

7.     At all times hereinafter mentioned, Defendants were an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose.

8.     At all times herein mentioned, Defendants employed employees in the activities of said enterprise, which is engaged in commerce or in the production of goods for commerce, including having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

9.     On information and belief, the Company, for the years 2016 through 2023, had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated), and, based on existing facts and evidence, that enterprise's annual gross volume of sales made or business done likely exceeded $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) for 2016 and did so in each year through 2023.

10.    Smith has been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the Act, 29 U.S.C. § 203(s).

11.    Defendants are and have been employers of the Company's employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

## **JURISDICTION AND VENUE**

12.    Jurisdiction is proper in the United States District Court, District of Massachusetts based on diversity jurisdiction, 28 U.S.C. § 1332(a)(1). The parties are diverse in citizenship and the amount in controversy exceeds $75,000.

13.    Jurisdiction of this action also is conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and by 28 U.S.C. § 1331.

14.     Venue is proper within the United States District Court for the District of Massachusetts - Eastern Division, under 28 U.S.C. § 1391, because Plaintiff resides within the Eastern Division of this judicial district and the events giving rise to the claims set forth herein occurred in this division.

<u>**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**</u>

15.     Smith began working for the Company on or about June 16, 2016.

16.     Defendant Courtney Wilson presented Smith with an agreement (the "Agreement") which he drafted, or which was drafted by someone else for the benefit of the Company. A true and accurate copy of the Agreement is attached as **Exhibit A** and incorporated herein.

17.     Smith did not draft the Agreement or any part of it. He signed the Agreement on or about the time he began working for the Company.

18.     Smith's title was Chief Operating Officer/Disability Specialist according to the Agreement.

19.     At all times relevant Smith was an employee of the Company pursuant to Massachusetts law.

20.     The Company is in the business of selling life, disability, long-term care, business insurance (including Key Man insurance, long and short-term disability and group life), annuities and it does financial planning for individuals.

21.     Smith was responsible for creating new business by facilitating relationships with licensed insurance and financial professionals on behalf of the Company and recruiting and training new sales associates.

22.     The Agreement mischaracterized Smith as a "Contractor." As a result, Smith was responsible for his payroll and related taxes and all his own benefits, including medical insurance, sick time, and was denied the potential benefits of the Massachusetts Paid Family Medical Leave

Act.

23.     Smith's duties were within the usual course of the Company's business.

24.     Plaintiff's work was done under the Company's direction and control, such as illustrations of potential coverage, application submission procedures, application processing, preliminary assessments, medical and financial assessments, and the Company's operating procedures.

25.     Plaintiff performed his work within the Commonwealth of Massachusetts, from his home in Quincy, Massachusetts, using a VOIP telephone the Company provided, Dropbox and Gmail accounts the Company provided, Company marketing materials, Company business cards, and Company presentation materials for Plaintiff to utilize while cultivating business for the Company.

26.     The Company paid for Plaintiff's VOIP phone, Dropbox account, and Google email account in what C. Wilson characterized in writing as part of Plaintiff's "salary."

27.     Smith was required to utilize Company forms and processes in the course of his work and to comply with all Company operations when selling insurance on behalf of the Company.

28.     Insurance policies submitted by Smith were reviewed and approved by the Company's internal underwriter. Absent approval by the Company's underwriter, Smith was unable to book any of the insurance policies he solicited on behalf of the Company and did not get paid.

29.     Per the Agreement, the Company was to pay for Plaintiff's business-related entertainment expenses with the Company's prior approval. The Company never reimbursed these expenses.

30.     The Agreement with the Company contained "Covenants Against Competition" prohibiting Plaintiff from competing with the Company, soliciting any Company customers, clients, or accounts, and soliciting any current or former Company employees without the Company's written consent.

31.    On at least several occasions, the Company and Courtney Wilson identified Smith as an employee of the Company to third parties.

32.    Company marketing materials identified Smith as an employee of the Company.

33.    Internal Company materials, such as emails and telephone listings identified Smith as an employee of the Company.

34.    The Company agreed to pay Smith commissions equal to 60% of the Company's brokerage commission based on each case (agent overrides will be split at the same rate between Smith and the Company). In addition, retail cases submitted by Smith will split 60%/40% of total commission with the Company unless otherwise specified using Single Case Agreement.

35.    The Company agreed to pay Smith commissions equal to 70% of the Company's brokerage commission based on each case (agent overrides will be split at the same rate between Smith and the Company unless otherwise specified using Single Case Agreement, after total production equals $150,0000. In addition, any retail cases submitted by Smith will be split 70%/30% of the total commission unless otherwise specified using Single Case Agreement).

36.    The Company agreed to pay Smith commissions equal to 75% of the Company's brokerage commission based on each case (agent overrides were to be split at the same rate between Smith and the Company unless otherwise specified using Single Case Agreement) after total production exceeds $300,000. Any retail cases submitted by Smith were to be split 75%/25% total commission unless otherwise specified using Single Case Agreement.

37.    According to the terms of the Agreement, all commissions paid to Smith were to be considered vested from the first dollar including renewal commissions.

38.    The Agreement states that all business written by Smith before his employment by the Company was to be retained by him and not to be incorporated into the Company's business block for servicing. Any adjustments or increases which Smith chose to process through the

Company will be subject to the compensation terms stated in the Agreement.

39.    The Agreement required that Smith provide his services exclusively to the Company.

40.    Smith provided his services exclusively to the Company.

41.    The Agreement imposed restrictions upon Smith's ability to work elsewhere. The Agreement included covenants against competition and non-solicitation of customers, clients, or accounts during the contract term and for six-months after Smith's contract with the Company ended.

42.    The Agreement states that during the contract term and for six-months thereafter, Smith "shall not, directly or indirectly, solicit for employment or employ any employee or former employee of FIG without written consent from FIG."

43.    The Agreement provides that the Company would cover certain expenses for Smith "for the purposes of cultivating business on behalf of Fortify Insurance Group to include business cards, presentation materials and the like. Entertainment expenses require prior approval." The Company did not reimburse Smith for his approved business expenses even though it agreed to reimburse Smith on an "expedited basis not to exceed 30 business days."

44.    The Company agreed to pay Smith a commission for insurance placements he made and for renewals for these insurance policies, on a monthly basis.

45.    The Company admits that it owes Smith approximately $50,000 in unpaid commissions but claims that certain overpayments were made to Smith.

46.    Defendants have failed and refused to pay Smith the commissions due and owing to him less any alleged overpayments.

47.    At all relevant times, Smith performed his work within the Commonwealth of Massachusetts, working from his home office in Quincy, Massachusetts.

48.    On rare occasions, Smith traveled to potential client sites outside of Massachusetts to solicit business on behalf of the Company. Smith was accompanied by Defendant Courtney Wilson

on some of these business trips.

49.     Smith primarily used his internet and telephone to solicit clients for the Company.

50.     Smith generally worked at least forty hours per week and at least 48 weeks per year.

51.     The Company failed to post the required minimum wage notice pursuant to 454 C.M.R. 27.07(1), or to provide the notice to Smith for posting in his office.

52.     The Company failed to keep true and accurate records of Smith's time spent working for the Company and the amount paid each pay period, as required by M.G.L c. 151 and 454 C.M.R. 27.07(1).

53.     Although the Agreement provided that Smith would be paid by commission only, he was not lawfully a commissioned salesperson under the FLSA, 29 U.S.C. § 201, *et seq.*

54.     The FLSA provides that a commissioned outside salesperson may be exempt from the minimum wage and overtime hours requirements of the FLSA, provided that the following tests are both met:

- The employee's primary duty must be making sales (as defined in the FLSA), or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

- The employee must be customarily and regularly engaged away from the employer's place or places of business.

55.     Pursuant to the regulations promulgated under the FLSA, outside sales does not include sales made by mail, telephone or the internet.

56.     Pursuant to the regulations promulgated under the FLSA, "[a]ny fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."  *See* https://www.dol.gov/agencies/whd/fact-sheets/17f-overtime-outside-sales.

57.     Smith's primary place of business was the office located in his Quincy, MA home. As such, under the FLSA, Smith's office was one of the Company's places of business.

58.     Defendants violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), by employing Smith and not compensating him at the minimum wage rate required under the Act and set by the Commonwealth of Massachusetts.

59.     Defendants did not compensate Smith for his work as a Disability Specialist from on or about June 16, 2016, through at least April 10, 2023, on a weekly or bi-weekly basis. Defendants are liable for compensation owed to Smith and an equal amount of liquidated damages under Section 16(c) of the Act, 29 U.S.C. § 216(c).

60.     At all times covered by this Complaint, Defendants were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose.

61.     Defendants employed employees working in the activities of said enterprise, which was engaged in commerce or in the sale of goods for commerce, including having employees sell insurance policies that have been moved in or produced for commerce.

62.     Defendants' employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

63.     Defendants misclassified Smith as an independent contractor under Massachusetts law.

64.     Defendants misclassified Smith as an independent contractor under federal law and regulations.

65.     The United States Department of Labor's independent contractor rule in place from March 8, 2021, until March 11, 2024, identified five economic factors, as follows:

a) The nature and degree of control over the work.

b) The worker's opportunity for profit or loss.

c)    The amount of skill required for the work.

d)    The degree of permanence of the working relationship between the worker and the potential employer.

e)    Whether the work is part of an integrated unit of production.

66.    Smith was properly deemed an employee under the 2021 independent contractor rule. Smith's work was largely controlled by the Company because he had to operate within their framework, worked exclusively for the Company using its integrated processes, his degree of profit and loss was subject to the Company's underwriting decisions, and he worked for many years for the Company, demonstrating a significant degree of permanence.

67.    The current (as of March 11, 2024) independent contractor test is as follows:

a) The opportunity for profit or loss depending on managerial skill.

b) Investments made by the worker and potential employer.

c) The degree of permanence of the work relationship.

d) The nature and degree of control.

e) The extent to which the work performed is an integral part of the potential employee's business.

f) The degree of skill and initiative involved in the work.

68.    Smith is an employee under the current independent contractor rule. Smith's work for the Company was an integral part of the Company's business; the Company controlled the process and its outcome, thus determining Smith's compensation; Smith engaged in marketing or other efforts to expand the Company's business and not his own; and Smith worked exclusively for the Company using its technology, telephone, and email; the relationship was of long duration; the Company invested in Smith and its business overall using its money, employees and other resources,

among other factors.

69.    Smith worked more than 40 hours per week in some workweeks covered by this Complaint. For workweeks when Smith worked more than 40 hours, Defendants failed to compensate him for his overtime hours worked at no less than one and one-half times his regular rate of pay.

70.    Defendants used a separate company, Barret Wilson Enterprises, to pay Smith for some of his commissions.

71.     Defendants' failure to pay minimum wage violations of the FLSA were knowing, deliberate, and/or intentional, or were done with reckless disregard for that statute.

72.    Defendants violated the FLSA by failing to make, keep, and preserve adequate and accurate records for employees. Specifically, Defendants' records failed to show adequately and accurately the hours worked and compensation paid to Smith.

73.    Smith was not an outside salesperson under Massachusetts law because he regularly made sales from one of the Company's places of business.

74.    Massachusetts law does not contain an exemption for minimum wage or overtime for inside sales employees. As an inside salesperson working in Massachusetts, Smith was entitled to at least minimum wage plus overtime under the Massachusetts wage and hour laws. Smith was entitled to be paid a fair and reasonable wage or salary for his work on behalf of the Company, which far exceeded the minimum wage.

75.    The Defendants were required to pay Smith's wages, including any overtime, on a weekly or bi-weekly basis.

76.    Defendants terminated Smith's employment on April 10, 2023.

77.    Defendants terminated Smith's employment in retaliation for his ongoing complaints about not being paid his commissions. Smith first brought his complaints to the Defendants during

June 2022.

78.    On the date of his discharge, Smith was entitled to be paid his full earned and definitely due and determined commissions for 2017 through 2023, as required by M.G.L. c.149, §148. Defendants were also required to pay Smith any wages and overtime due at that time.

79.    Pursuant to the Massachusetts Minimum Wage Act, M.G.L. c. 151, Smith also was entitled to be paid at least the then current Massachusetts minimum wage for each hour or part thereof he worked for the Company. The Company has not paid Smith his weekly or bi- weekly wages and certainly not the minimum wage for each hour he worked or part thereof, during his employment.

80.    Smith has repeatedly requested information from the Defendants concerning the commissions due him. To date, Defendants have failed and refused to provide Smith with an accurate and complete accounting of his commissions.

81.    Smith has calculated the commissions due him to date (but not including all commissions and not all renewals, due to not having all the records) to be in excess of $150,000.

82.    With one exception noted below, as of the date this case was filed, Defendants have not made any further payments to Smith for his earned and unpaid commissions, or for the minimum wage to which he was entitled as a Company employee working in Massachusetts. On or around June 2023, the Company paid Smith a commission for a new case he closed on or about May 10, 2023.

83.    On or about June 23, 2023, Smith filed a written complaint with the Massachusetts Attorney General regarding his unpaid commissions and wages and requested a right to sue letter.

84.    On or about June 28, 2023, Smith received the right to sue letter from the Massachusetts Attorney General. A true and accurate copy of the right to sue letter is attached as **Exhibit B** and incorporated herein.

<u>**COUNT I**</u>

**Failure to Pay Wages in Violation of M.G.L. c. 149, § 148**

**(All Defendants)**

85.    Smith repeats and realleges, as if set forth fully herein, all the allegations of paragraphs 1 through 84 above.

86.    Smith was an employee of the Company pursuant to M.G.L. c. 149, § 148 and M.G.L. c. 149, § 148B.

87.    Chapter 149, §148 requires that wages be paid on a timely basis. Smith was entitled to be paid at least minimum wage for each hour worked or part thereof, on a weekly or bi-weekly basis, but he never was paid by Defendants.

88.    Smith was required to be paid his commissions on a monthly basis, but defendants frequently failed to pay him on time or in full.

89.    The Agreement is a "special contract" pursuant to M.G.L. c. 149, § 148, and therefore violates the Massachusetts Wage Act.

90.    Defendants also violated M.G.L. c. 149, § 148, when they failed to pay the full amount of Smith's earned wages and commissions on the day his employment was terminated.

91.    Defendant Courtney Wilson is individually liable for the wages and commission owed to Smith because at all relevant times he was the President of the Company and was a person having the management of the Company within the meaning of the Wage Act.

92.    Defendant Courtney Wilson controlled, directed, and participated to a substantial degree in formulating and determining the financial and payroll policies of the Company.

93.    Defendant Susan Wilson is individually liable for the wages and commissions owed to Smith because at all relevant times she was the Chief Executive Officer of the Company and was the person having the management of the Company within the meaning of the Wage Act.

94.     Defendant Susan Wilson controlled, directed, and participated to a substantial degree in formulating and determining the financial and payroll policies of the Company. In addition, Defendant Susan Wilson oversaw the Company's payroll and commission process and was responsible for ensuring Smith was paid timely and in full.

95.     Defendants owe Smith reimbursement for the employer's share of payroll and other taxes which Smith paid on his own behalf.

96.     Defendants' failure to comply with M.G.L. c. 149, § 148 entitles Smith to recover treble damages, interest, reasonable attorney's fees, and costs pursuant to M.G.L. c. 149, § 150.

## COUNT II

### Retaliation in Violation of M.G.L. c. 149, § 148A

### (All Defendants)

97.     Smith repeats and realleges, as if set forth fully herein, all the allegations of paragraphs 1 through 96 above.

98.     Smith repeatedly requested that Defendants provide him with a full written accounting of all his commissions and promptly pay him all commissions earned and payable.

99.     Defendants repeatedly stalled and refused to provide Smith with an accurate and complete accounting of his commissions earned, including all renewals which will be payable in future upon the renewal of the insurance policies booked by Smith.

100.    Smith's repeated complaints were based upon his reasonable belief that Defendants were withholding his earned commissions and refusing to provide him with an accurate accounting of his commissions.

101.    Defendants terminated Smith's employment because of his persistent complaints about his unpaid commissions. These complaints were a determinative factor in Defendants' decision to terminate Smith's employment.

102.    Defendants Courtney Wilson and Susan Wilson are individually liable for Smith's unpaid commissions because at all relevant times they were officers of the Company and were the persons having the management of the Company within the meaning of the Wage Act. Defendants controlled, directed, and participated to a substantial degree in formulating and determining the financial and payroll policies of the Company.

103.    Defendant Susan Wilson oversaw the Company's payroll and commission process and was responsible for ensuring Smith was paid timely and in full.

104.    As a direct and proximate result of Defendants' unlawful retaliation against Smith in violation of M.G.L. c. 149, § 148A, Smith is entitled to recover his back pay, lost benefits, treble damages, interest, reasonable attorney's fees, and costs.

## <u>COUNT III:</u>

### Violation of M.G.L. c. 151 for Failure to Pay Minimum Wages

### (All Defendants)

105.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 104 above.

106.    The Company failed to pay Smith the then current minimum wage at any time during his employment by the Company.

107.    As a direct and proximate result of the Company's failure to pay Smith the then current minimum wage during his employment by the Company, Smith has incurred monetary damages.

108.    The Company's failure to comply with M.G.L. c. 149, § 148 entitles Smith to recover treble damages, interest, reasonable attorney's fees, and costs pursuant to M.G.L. c. 149, § 150.

## COUNT IV:

### Misclassification in Violation of M.G.L. c. 149, § 148B

### (All Defendants)

109.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 108 above.

110.    M.G.L. c. 149, §148B presumes that "an individual performing any service, except as authorized under this chapter, shall be considered to be an employee … unless:

- the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

- the service is performed outside the usual course of the business of the employer;

-  and the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

111.    Smith was not free from control and direction in connection with the performance of his duties for the Company, both under his contract and in fact.

112.    The services performed by Smith for the Company were performed in the usual course of the business of the Company.

113.    Smith was not customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the services performed for the Company. Smith worked only for the Company during all relevant times.

114.    In addition to the Company, Courtney Wilson and Susan Wilson are liable to Smith for their misclassification of him, because at all relevant times they were officers or agents having the management of the Company.

115.    As a direct and proximate result of the Defendants' misclassification of Smith as an independent contractor, Smith has incurred monetary damages.

116.    The Defendants' failure to comply with M.G.L. c. 149, § 148B entitles Smith to recover treble damages, interest, reasonable attorney's fees, and costs.

## COUNT V:

### Breach of Contract

### (The Company)

117.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 116 above.

118.    The Agreement between Smith and the Company is a valid contract, supported by adequate consideration.

119.    Smith has performed all his obligations under the Agreement.

120.    By its conduct, the Company has breached its contractual obligations owed to Smith.

121.    As a direct and proximate result of the Company's breach of contract, Smith has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## COUNT VI:

### Breach of the Covenant of Good Faith and Fair Dealing

### (The Company)

122.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 121 above.

123.    The Agreement between Smith and the Company contained an implied covenant of good faith and fair dealing running to Smith.

124.    By virtue of its conduct above, the Company has committed breaches of the implied covenant of good faith and fair dealing and deprived Smith of the fruit of the parties' Agreement.

125.    As a direct and proximate result of the Company's conduct, Smith has suffered, and

will continue to suffer, monetary damages and in an amount to be determined at trial.

## COUNT VII:

### Demand for an Accounting

### (The Company)

126.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 125 above.

127.    The Company has wrongfully obtained and/or will wrongfully obtain money damages from Smith's clients and prospects.

128.    Many of the documents needed to determine the scope and extent of Smith's commissions are within the possession, custody, or control of the Defendants.

129.    Smith needs access to these documents and is entitled to an accounting of all revenues improperly obtained by Defendants from Smith to the detriment and expense of Smith.

130.    Smith requests and is entitled to full access to the books and records, including any or all business email accounts of the Defendants, which should be ordered to produce forthwith.

## COUNT VIII:

### Violation of Sections 15(a)(2) of the Act – Failure to Pay Minimum Wages

### (All Defendants)

131.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 130 above.

132.    Defendants willfully violated the provisions of Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215(a)(2), by employing Smith and not compensating him at the minimum wage rate required under the FLSA.

133.     Defendants failed to compensate Smith for his work as a Disability Specialist from on or around June 16, 2016, through at least April 10, 2023.

134.     Defendants are liable for compensation owed to Smith and an equal amount of liquidated damages under Section 16(c) of the FLSA, 29 U.S.C. § 216(c).

## COUNT IX:

**Violation of the FLSA – Section 13(a)(1) - Failure to Pay Exempt Employee – 29 C.F.R Part 541.600, et seq.**

**(All Defendants)**

135.     Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 134 above.

136.     Section 13(a)(1) of the FLSA provides a complete exemption from the minimum wage and overtime pay requirements for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in 29 C.F.R. Part 541.

137.     An employee may qualify for exemption if all of the pertinent tests are met relating to duties, salary level, and compensation "on a salary basis," as discussed in the regulations promulgated under the Act at 29 C.F.R. Part 541.

138.     To qualify for exemption, Smith must have been paid at a rate of at least $684 per week on a salary or fee basis.

139.     In order for an employee to be considered paid on a "salary basis" he must be paid "a predetermined amount . . . not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

140.     Subject to the exceptions provided in [section 541.602(b)], an exempt employee must receive the full salary for any week in which the employee performs any work. *Id.*

141.    In the event Smith is found to be an exempt employee under Section 13(a)(1) of the Act, Defendants failed to comply with the salary basis requirement by paying Smith the requisite exempt salary for each week in which he performed any work during the period from on or about June 16, 2016 through April 10, 2023.

142.    Defendants' failure to pay Smith the required salary for each week in which he performed any work means that Defendants cannot claim that Smith was an exempt employee under the FLSA.

143.    Smith is therefore deemed non-exempt and entitled to be paid minimum wage for each hour or part thereof that he worked for Defendants, in an amount to be determined at trial.

## COUNT X:

### Unjust Enrichment

### (The Company)

144.    Smith repeats and realleges, as if set forth fully herein, the allegations of paragraphs 1 through 143 above.

145.    Smith transferred his SCDI accounts to the Company when he began working for it.

146.    The Agreement provides that Smith's SCDI accounts are his alone and do not become a part of the Company's business.

147.    Smith transferred the accounts because he had been misled by Defendant Courtney Wilson into believing they were to engage in a partnership. This conferred a benefit upon the Company.

148.    At all relevant times the Company was aware of the benefit conferred upon it by Smith due to his transfer of these valuable accounts to the Company.

149.    As a result of said transfer, the Company received a valuable benefit in the form of

commissions and renewals from these accounts.

150.    The Company not only breached the Agreement but has retained all the SCDI accounts belonging to Smith.  The Company has retained the benefit under circumstances that make it inequitable for the Company to do so.

151.    The Company has been unjustly enriched by the commissions and renewals from the transferred accounts to the detriment of Smith.

152.    The Company must disgorge all profits it received and pay them to Smith, in an amount to be determined at trial.

**WHEREFORE,** Smith respectfully requests that the Court grant the following relief:

1.  Judgment in his favor on Counts I, II, III, IV, V, VI, VII, VIII, IX and X.

2.  An award of Smith's earned and unpaid wages and commissions.

3.  An award of Smith's lost wages and benefits due to his retaliatory termination.

4.  Treble damages for Smith's earned and unpaid wages, commissions, and his lost wages and benefits during his period of unemployment.

5.  For an order pursuant to Section 16(c) of the FLSA, 29 U.S.C. § 216(c), holding Defendants liable for unpaid back wages found due to Smith, plus liquidated damages equal in amount to the unpaid compensation found due.

6.  In the event liquidated damages are not awarded, an order awarding prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621.

7.  Disgorgement by the Company of all profits for accounts belonging to Smith.

8.  Reasonable attorney's fees, costs, and statutory interest.

9.  Such other relief as the Court deems just and proper.

## **JURY DEMAND**

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

      Respectfully submitted,

JONATHAN SMITH

By his attorneys,

/s/ Valerie C. Samuels

Valerie C. Samuels BBO # 548539

SASSOON CYMROT LAW, LLC

84 State Street

Boston, MA 02109

(617) 720-0099

vsamuels@sassooncymrot.com

Dated:  June 7, 2024, 2024

### CERTIFICATE OF SERVICE

I, Valerie C. Samuels, hereby certify that on June 7, 2024, I caused a copy of the foregoing document to be served electronically through the ECF system, which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Valerie C. Samuels