# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:23-cv-11482-DLC |
| FORTIFY INSURANCE GROUP, INC., COURTNEY WILSON AND SUSAN WILSON, | ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL

NOW COME all Defendants, by and through their undersigned counsel, and hereby respectfully submit this memorandum of law in support of their Motion to Compel (the "Motion") Plaintiff to:

*First*, produce (1) his resume; (2) his and SCDI's (the latter defined below) federal and state tax returns for calendar years 2014 to the present; (3) contracts and agreements entered into by his business, Smith Company Disability, Inc. ("SCDI"), from June 16, 2016 to the present; (4) documents concerning the hours he purportedly worked for or on behalf of Defendant Fortify Insurance Group, Inc. ("Fortify"); and (5) documents concerning the licensed advisors that he has continued to do business with, as well as the names of policies he has written (but not policyholder details), all since his affiliation with Fortify ended.

*Second*, supplement his answers to certain interrogatories concerning (1) his claim that he worked more than forty (40) hours per week for Fortify; and (2) the licensed advisors that he has continued to do business with, as well as the names of policies he has written (but not policyholder details), all since his affiliation with Fortify ended.

1

For the reasons that follow, the information sought is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

## BACKGROUND

By way of background, Fortify is a Brokerage General Agency ("BGA") providing protection support to financial advisors and independent insurance specialists in the form of disability, life, long term care and group insurance. Insurance carriers are not allowed to sell these types of insurance products directly to consumers; rather, a licensed agent is required to sign applications and justify suitability of insurance. The primary way that carriers can distribute their products is through a BGA like Fortify. Fortify is a wholesaler of these types of products and has selling agreements with a variety of insurance carriers that have approved Fortify to be a solicitor of their insurance solutions. To that end, Fortify recruits licensed advisors—i.e., individual insurance and financial advisors who hold specific licenses and, for example, advise insureds on items like suitability of potential insurance coverage— to write business with carriers through Fortify.

Plaintiff Jonathan Smith ("Mr. Smith") was engaged by Fortify as an independent contractor in June of 2016, to act as a Brokerage Consultant/Disability Specialist.[1] In this role, Fortify expected Mr. Smith to recruit and bring in new advisor (or "producer") relationships to Fortify, to support the growth of the company. Defendants' position is that companies in the insurance industry regularly and customarily engage individuals like Mr. Smith as an independent contractor.

---

[1] Fortify acknowledges that its agreement with Mr. Smith—an accurate copy of which is attached to Mr. Smith's original Complaint as Exhibit A, *see* Doc No. 1-3—identified his title as "Chief Operating Officer/Disability Specialist." With respect to the "Chief Operating Officer" title, Defendants' position is that Mr. Smith had no duties or responsibilities as COO, and it was never intended that he would in fact be acting in any capacity as Fortify's COO. Several years later, when Fortify promoted another individual to serve as and perform duties as COO, Mr. Smith was told to remove "COO" from his e-mail signature block, which he did without objection.

As part of this arrangement, Mr. Smith also brought with him to Fortify those clients he had through his own business, SCDI, which he has characterized as an insurance agent and broker that he formed on February 6, 2015. *See* Ex. A to Motion, Plaintiff's Answer to Interrogatory No. 13; *see also* Mr. Smith's Amended Complaint, ¶ 145 (Doc No. 40) ("Smith transferred his SCDI accounts to [Fortify] when he began working for it."). All or virtually all of Mr. Smith's commission payments were paid by Fortify to SCDI rather than him personally, per his request.[2]

Ultimately, the relationship soured, as Fortify felt that Mr. Smith did not hold up his end of the bargain. Fortify decided to end its affiliation with Mr. Smith, though the parties dispute (1) the timing of this decision (Fortify submits this happened in August of 2022, while Mr. Smith contends this happened in April of 2023), and (2) the reasons behind this decision (Fortify submits that it ended its affiliation with Mr. Smith because of, among other reasons, his lack of production and expenses associated with the relationship, while Mr. Smith contends that he was terminated in retaliation for complaining about his commissions).

At its heart, Mr. Smith's claims against Defendants are that (1) Fortify breached its agreement with Mr. Smith, and (2) he was misclassified as an independent contractor under state and federal law. He has brought ten counts against Defendants: Failure to Pay Wages in Violation of M.G.L. c. 149, § 148 (Count I); Retaliation in Violation of M.G.L. c. 149, § 148A (Count II); Failure to Pay Minimum Wages under M.G.L. c. 151 (Count III); Misclassification under M.G.L. c. 149, § 148B (Count IV); Breach of Contract (Count V) (Fortify only); Breach of the Covenant of Good Faith and Fair Dealing (Count VI) (Fortify only); Demand for Accounting (Count VII) (Fortify only); Violation of Sections 15(a)(2) of the Fair Labor Standards Act

---

[2] For one carrier relationship, Fortify and SCDI were each paid directly by the carrier. Discovery has also revealed that, for certain tax years, Fortify issued Form 1099 to SCDI, and in other years it issued Form 1099 to Mr. Smith.

("FLSA") (Count VIII); Violation of Section 13(a)(1) of the FLSA (Count IX); and Unjust Enrichment (Count X) (Fortify only). *See* Mr. Smith's Amended Complaint at 13-21. Defendants vigorously dispute each and every one of Mr. Smith's claims and have asserted twenty-four (24) affirmative defenses. *See generally* Defendants' Answer to First Amended Complaint and Affirmative Defenses (Doc No. 41).

Against this backdrop, Defendants summarize their position on each of the following disputed discovery requests:

## DISCOVERY REQUESTS AT ISSUE[3]

### 1. Mr. Smith's Resume

In Defendants' First Request for Production of Documents (the "First Requests"), Defendants requested that Mr. Smith produce all documents concerning his work history "from January 1, 2014 to the present, including, but not limited to, resumes . . . ." Ex. B to Motion, First Request No. 15. In response to this Request, Mr. Smith raised numerous objections. Ex. C to Motion, Plaintiff's Response to First Request No. 15.

Notwithstanding his objections, after Defendants served a discovery dispute letter related to his response, Mr. Smith indicated by letter dated August 26, 2024 that his resume would be produced. Most recently, on December 30, 2024, Mr. Smith indicated again by e-mail that his resume would be produced, shortly following New Year's Day. However, Defendants have still not received it. It is unclear to Defendants why this has not been produced over a year since the First Requests were served. This is an uncontroversial request. In any event, Mr. Smith's

---

[3] Pursuant to Local Rule 37.1(b)(2), with respect to the discovery requests identified herein, discovery conferences were held among counsel for the parties via Zoom on October 24, 2024 at approximately 2:00 p.m. and again on October 29, 2024 at approximately 1:30 p.m. Attorneys Segal, Brooks, and Samuels attended each discovery conference. Each discovery conference lasted approximately one to one and a half hours. Counsel for the parties also participated in a discovery conference before Judge Cabell on December 13, 2024. Agreement could not be reached on the discovery requests identified herein.

resume is relevant to the subject matter of this litigation, as it would presumably contain information about his qualifications and experience in and outside the insurance industry, including, but not limited to, where he was an employee, independent contractor, or owner of a business (e.g., SCDI). *See Cherkaoui v. City of Quincy*, No. 14–cv–10571–LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." (internal quotation marks omitted)); *see also cf. Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 399 (W.D. Tenn. 2012) (plaintiffs' resumes to prior and current employers were deemed discoverable). The Court should order him to produce his resume.

### 2. Mr. Smith's and SCDI's Tax Returns

Defendants requested that Mr. Smith produce his federal and state tax returns for calendar years 2014 to the present, which also encompasses any tax filings concerning SCDI. Ex. B to Motion, First Request No. 20. In response to this Request, Mr. Smith raised numerous objections. Ex. C to Motion, Plaintiff's Response to First Request No. 20. The parties have been unable to resolve this discovery dispute. Courts in this district have held that "income tax returns are discoverable where the returns are relevant to the claims of the parties and the information is not readily available in another form." *Viscito v. Nat'l Planning Corp.*, No. 3:18-30132-MGM, 2019 WL 5318228, at *3 (D. Mass. Oct. 21, 2019) (internal quotation marks omitted). Mr. Smith's and SCDI's tax returns are highly relevant to the claims and defenses in this case for several reasons, and Defendants do not believe the information is readily available in another form.

The *Viscito* case is instructive and directly on point. In *Viscito*, the plaintiff brought virtually the same claims as those being pursued in this litigation, including against a company he had worked for as a "registered representative, insurance agent, and investment advisor" for just over four years (2013 to 2017). *Id.* at *1 (and *compare* the factual allegations summarized by the *Viscito* Court with those set forth in Mr. Smith's Amended Complaint). The defendants in *Viscito* sought production of, *inter alia*, plaintiff's tax returns, including all supporting schedules and attachments, and agreed that information therein related to the plaintiff's wife's income could be redacted before production and the returns would be made subject to the Court's confidentiality order entered in the case. *Id.* at *2. Over the plaintiff's objections, the Court ordered production of the tax returns, reasoning, in part:

> Defendants have more than demonstrated the relevance of Plaintiff's tax returns and supporting documentation for the years 2012-2018. Plaintiff's damages claim as stated in his initial disclosures is for lost compensation in the form of taxes he paid from January 8, 2015 to January 8, 2018 (calculated as a loss of $413,197), lost benefits (calculated as a loss of $280,241), business expenses he claims he paid from January 8, 2015 to January 8, 2018 ($59,182), and a lost opportunity to contribute to a company 401K and other deferred compensation plans resulting in an alleged loss of an unknown amount (Dkt. No. 78-1 at 6). Plaintiff leaves unexplained how the figures he provided were calculated or could be challenged or verified without access to his tax returns, all attached schedules, and supporting documents. He has pointed to no "reasonable substitute[ ]" for production of complete federal, state, and local tax returns as a means of establishing the facts about his income. *Buntzman*, 146 F.R.D. at 32. By itself, the foregoing is sufficient to require production of these documents, but there is more.

*Id.* at *3. Here, like the plaintiff in *Viscito*, Mr. Smith claims that (1) Defendants owe him "reimbursement for the employer's share of payroll and other taxes which [he] paid on his own behalf;" (2) he was not reimbursed by Fortify for certain business-related expenses he incurred; (3) he was responsible for "all his own benefits, including medical insurance [and] sick time;" and (4) he is entitled to back pay, lost wages, and lost benefits. Mr. Smith's Amended Complaint, ¶¶ 22, 29, 43, 95, 104; *id.* at 21. *See also* Ex. A to Motion, Plaintiff's Answers to

Interrogatory Nos. 14 and 15 (asserting that he "has lost income due to Defendants' retaliatory termination of his employment. Plaintiff also paid the employer's share of payroll taxes during his employment with Fortify, which payroll taxes should have been paid by Fortify, Plaintiff paid for his family's health insurance because Fortify misclassified him as an independent contractor, and Plaintiff did not receive the benefit of the Massachusetts Earned Sick Time Law"); *see also* Ex. H to Motion, Plaintiff's Supplemental Answer to Interrogatory No. 14 (adding, *inter alia*, that Defendants "also required Smith to pay a portion of Fortify's overhead for events sponsored by Fortify and did not pay his expenses as required by the agreement"). Mr. Smith has not provided Defendants with any dollar figures in discovery to calculate or verify the foregoing damages claims and, consistent with *Viscito*, his tax returns must be produced.

The foregoing is enough to order Mr. Smith to produce the tax returns but, as the *Viscito* Court put it, "there is more." 2019 WL 5318228, at *3. The *Viscito* Court agreed with the defendants' contention that the returns would also likely contain information about, *inter alia*, "the extent of his business interests outside of [the corporate defendant] while he was affiliated with [the corporate defendant], and his investment in his businesses." *Id.* The *Viscito* Court reasoned, in part:

> For purposes of Plaintiff's FLSA claim, . . . the focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself. . . . Among the six factors considered by the court are the worker's opportunity for profit or loss and the extent of the worker's investment in the business. . . . Plaintiff's 2012-2018 federal, state, and local tax returns, attached schedules, and supporting documentation will include information about the sources of Viscito's income, the extent of his business undertakings, and his investment in those undertakings during the period of his affiliation with [the corporate defendant].

*Id.* (internal quotation marks and punctuation omitted); *see also Patel v. 7-Eleven, Inc.*, No. 17-11414-NMG, 2019 WL 10959829, at *2 (D. Mass. Dec. 16, 2019) ("Courts in this district have

7

specifically found that tax returns of representative plaintiffs in employment and wage cases are highly relevant and discoverable."); *Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 555 n.4 (D. Mass. 2017) (in case involving claims brought under the FLSA and Massachusetts Wage Act, the Court observed that, "in other employment cases [it had] found the tax returns of the representative plaintiffs to be highly relevant and discoverable. I am at a loss as to why a plaintiff asserting a claim for failure to pay appropriate wages would take the position that such information is not discoverable. . . . I *strongly* suggest that Plaintiffs provide Defendants with their tax returns and any information responsive to Defendants' discovery requests regarding such information." (emphasis in original)).

The situation here is no different. Mr. Smith has brought claims against Defendants under the FLSA and Massachusetts Wage Act for failure to pay proper wages to him, thereby making his and SCDI's tax returns highly relevant to this matter. Stating further, Mr. Smith's and SCDI's tax returns are relevant to Defendants' defenses in this case. For example, under the independent contractor statute, Defendants are entitled to explore whether Mr. Smith was "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." M.G.L. c. 149, § 148B(a)(3).

Furthermore, and more generally, tax returns are discoverable when relevant to a plaintiff's damages claim. As indicated above, Mr. Smith is claiming damages in the form of, *inter alia*, lost wages and benefits. *See* Mr. Smith's Amended Complaint at 21 (seeking an award of "lost wages and benefits due to his retaliatory termination"); Ex. A to Motion, Plaintiff's Answers to Interrogatory Nos. 14 and 15 (claiming he "has lost income due to Defendants' retaliatory termination of his employment"); Ex. H to Motion, Plaintiff's Supplemental Answer to Interrogatory No. 14. Courts in this district have held on multiple

occasions that a plaintiff's tax returns are discoverable where he makes a claim for loss of wages or earnings or otherwise puts his income at issue in the case, and has not offered adequate alternatives for the opposing party to obtain equivalent information. *See, e.g.*, *LaRoe v. Div. of Bureau of Spec. Educ. Appeals*, No. 3:21-cv-30020-MGM, 2024 WL 1093052, at *3 (D. Mass. Mar. 13, 2024) ("Where, as in this case, the information in a plaintiff's tax returns is relevant to damages, personal state and federal tax returns are discoverable."); *Amoah v. McKinney*, No. 4:14-40181-TSH, 2016 WL 1698267, at *4 (D. Mass. Apr. 27, 2016) ("Plaintiff's past and future lost earnings cannot accurately be computed without documentation of his prior wages and related employment information; defendants' requests # 11 and 12 speak directly to these matters. *See, e.g.*, *Madrid v. Don Kelly Const., Inc.*, No. 12 Civ. 0451, 2013 WL 1897826, at *11 (D.N.M. Apr. 24, 2013) ('[Plaintiff] has put his income at issue here, by asserting claims for past and future lost wages and benefits, lost income, and loss of earning capacity from the alleged discrimination; thus, his personal income tax returns are discoverable.'"); *Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 30, 32 (D. Mass. 1993) (observing that in another case, "Judge Freedman, affirming this magistrate judge's ruling and citing Wright & Miller, stated that where a party has put in issue the amount of his income, that party's tax returns or reasonable substitutes are discoverable" (internal quotation marks and punctuation omitted)); *Tollefsen v. Phillips*, 16 F.R.D. 348, 348-49 (D. Mass. 1954) (ordering production of plaintiff's federal tax returns, and reasoning that "plaintiff, having made his earnings an issue, can scarcely say that they are confidential information in this case").

In sum, the Court should order Mr. Smith to produce federal and state tax returns for calendar years 2014 to the present for himself and SCDI. Defendants have no objection to him

redacting from those returns any information concerning his spouse's income, or producing those returns subject to this Court's Confidentiality Order. *See* Doc No. 27.

### 3. SCDI's Contracts and Agreements

Defendants requested that Mr. Smith produce all contracts and agreements entered into by SCDI from January 1, 2014 to the present (but understand that SCDI was not formed until February 6, 2015). Ex. B to Motion, First Request No. 16. In response to this Request, Mr. Smith raised numerous objections. Ex. C to Motion, Plaintiff's Response to First Request No. 16. The parties have been unable to resolve this discovery dispute.

SCDI's contracts and agreements are discoverable, at a minimum, beginning from June 16, 2016 (that being the date of the agreement entered into between Fortify and Mr. Smith) to the present, as they go to the issues of (1) the extent of Fortify's exertion of direction and control over Mr. Smith, (2) the degree to which Mr. Smith was economically dependent on Fortify, as opposed to him being in business for himself, and (3) his claim that Fortify has retained SCDI accounts that he brought to Fortify. Mr. Smith requested that Fortify pay SCDI rather than him, personally. When Fortify asked Mr. Smith to complete and return a W-9, Mr. Smith returned a W-9 for SCDI. Mr. Smith also alleges that Fortify "has retained all the SCDI accounts belonging to Smith." Mr. Smith's Amended Complaint, ¶ 150. Defendants vigorously dispute this allegation, and Mr. Smith has opened the door to discovery of SCDI's contracts and agreements, including those that post-date his affiliation with Fortify, to allow Defendants the opportunity to explore what "SCDI accounts" remain with SCDI and/or Mr. Smith.

As the *Viscito* Court reasoned when it ordered production of documents related to that plaintiff's business activities:

> [A]s to Plaintiff's claims under the FLSA and the MWA, the full extent of Plaintiff's business activities while he was affiliated with [the corporate

10

defendant] is relevant to the questions of the extent to which [the corporate defendant] exerted control and direction over Plaintiff, . . . and the degree to which Plaintiff was economically dependent on [the corporate defendant] or, as a matter of economic fact, in business for himself.

2019 WL 5318228, at *5 (internal punctuation omitted).

The Court should order Mr. Smith to produce all contracts and agreements entered into by SCDI from June 16, 2016 to the present.

### 4. Advisor Clients

Again, Mr. Smith alleges that Fortify "has retained all the SCDI accounts belonging to Smith." Mr. Smith's Amended Complaint, ¶ 150. In their Second Set of Interrogatories, Defendants asked Mr. Smith to

> Identify each and every advisor client with whom You have engaged in business transactions and/or communicated with since Your affiliation with Fortify ended. For each advisor client, identify the substance of the transaction and/or communication and the date of the transaction and/or communication.

Ex. D to Motion, Defendants' Second Set of Interrogatories, Interrogatory No. 2. Defendants also served a parallel document request. Ex. F to Motion, Defendants' Second Request for Production of Documents (the "Second Requests"), Second Request No. 3. Defendants objected to both discovery requests. Ex. E to Motion, Plaintiff's Answers to Defendants' Second Set of Interrogatories, Interrogatory No. 2; Ex. G to Motion, Plaintiff's Response to Second Request No. 3. Defendants then narrowed these discovery requests and now seek a list of all advisors who Mr. Smith has continued to do business with and the names of policies he has written since leaving Fortify, but not policyholder details. The parties have been unable to resolve this discovery dispute.

For the reasons stated above, *see* "3. SCDI's Contracts and Agreements," *supra*, given Mr. Smith's claim that Fortify has retained accounts belonging to SCDI, the information sought

by these narrowed requests is discoverable, and he should be ordered to provide substantive responses.

 5. **Hours Worked**

Mr. Smith alleges that he "worked more than 40 hours per week in some workweeks covered by this Complaint." Mr. Smith's Amended Complaint, ¶ 69. In their Second Set of Interrogatories, Defendants requested that he:

- Identify all Documents, records, or other materials You intend to rely on in support of Your allegations in Paragraph 69 of the Amended Complaint that You "worked more than 40 hours per week in some workweeks covered by this Complaint."

- Identify which workweeks during Your affiliation with Fortify that you allege You worked more than 40 hours.

Ex. D to Motion, Defendants' Second Set of Interrogatories, Interrogatory Nos. 5 and 6. After objecting to both interrogatories, Mr. Smith effectively "punted" and answered both as follows:

> Plaintiff states that it was Fortify's legal obligation pursuant to M.G.L. Chapter c. 151 and 454 C.M.R. 27.07(1), to keep track of all hours Plaintiff worked during each work week while Mr. Smith was employed by Fortify. Further answering, Plaintiff states that he was available to producers whenever they needed him, and worked as needed to make sure policies were purchased and paperwork completed, including on evenings, nights and weekends.

Ex. E to Motion, Plaintiff's Answers to Defendants' Second Set of Interrogatories, Interrogatory Nos. 5 and 6. He responded in similar fashion to the parallel document request, which sought documents concerning all hours he allegedly performed work for on behalf of Fortify. Ex. F to Motion, Second Request No. 6; Ex. G to Motion, Plaintiff's Response to Second Request No. 6. The parties have been unable to resolve this discovery dispute.

These responses do not address the substance of these discovery requests, which seeks information about what evidence **he has** related to his claims. He should be ordered to properly

answer each interrogatory and produce corresponding documents (if any) and, if he does not have any evidence of the hours he allegedly worked for Fortify, he needs to say so.

## **RESERVATION OF RIGHTS**

Pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure, Defendants reserve all rights to seek their reasonable expenses incurred in bringing the Motion, including attorney's fees.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court order:

1. Plaintiff to produce his resume;

2. Plaintiff to produce his and SCDI's federal and state tax returns for calendar years 2014 to the present, which may be redacted as to any information concerning his spouse's income and made subject to the Court's Confidentiality Order (Doc No. 27);

3. Plaintiff to produce contracts and agreements entered into by SCDI from June 16, 2016 to the present;

4. Plaintiff to produce documents concerning the hours he purportedly worked for or on behalf of Fortify;

5. Plaintiff to produce documents concerning the licensed advisors that he has continued to do business with, as well as the names of policies he has written (but not policyholder details), all since his affiliation with Fortify ended;

6. Plaintiff to supplement his answers to those interrogatories identified herein concerning (a) his claim that he worked more than forty (40) hours per week for Fortify; and (b) the licensed advisors that he has continued to do business with, as well as the names of policies he has written (but not policyholder details), all since his affiliation with Fortify ended; and

7.      Such other and further relief as the Court deems just and appropriate.

Dated: January 30, 2025

Attorneys for Defendants
FORTIFY INSURANCE GROUP, INC.,
COURTNEY WILSON, AND SUSAN WILSON

*/s/ Stephen B. Segal*

Stephen B. Segal, Esq. (BBO No. 690896)
Robert C. Brooks, Esq. (BBO No. 558781)
VERRILL DANA LLP
One Portland Square
Portland, ME 04101
207-774-4000
rbrooks@verrill-law.com
ssegal@verrill-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2025, I caused a copy of the foregoing document to be served electronically through the ECF system, which will send notification of such filing to all counsel of record in the above-referenced matter.

*/s/ Stephen B. Segal*

Stephen B. Segal