UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JONATHAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:23-CV-11482-DLC |
| | ) | |
| FORTIFY INSURANCE GROUP, | ) | |
| COURTNEY WILSON, and SUSAN WILSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

### Introduction

The Plaintiff, Jonathan Smith ("Smith" or "Plaintiff"), respectfully submits his Opposition to the Defendants' Motion to Compel Discovery. As set forth in the Amended Complaint, Smith seeks damages consisting of unpaid commissions and other wages against his former Employer, Fortify Insurance Group, Inc. (the "Employer" or "Defendant"), its President and Founder, Courtney Wilson ("C. Wilson"), and its Chief Executive Officer, Susan Wilson ("S. Wilson") (collectively, "Defendants or the "Employers"[1]), for, *inter alia*, breach of the Massachusetts Wage Act and the Fair Labor Standards Act ("FLSA"), failure to pay earned wages and commissions, repeated late payment of commissions, and retaliation under the Massachusetts Wage Act.[2] The Motion seeks

---

[1] The individual Defendants are deemed to be "employers" under the Wage Act and the Fair Labor Standards Act. M.G. L. c. 149, § 148; *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013) (FLSA falls on individuals under the "Economic Reality Test"); *see also*, *Cook v. Patient Edu, LLC*, 465 Mass. 548, 552 (2013) ("[Wage Act] in effect imposes liability on the president and treasurer of a corporate employer, as well as on an officer or agent of the corporation who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation.") (quotation omitted).

[2] Smith's additional claims are for violation of the Massachusetts Independent Contractor Law; violation of the Massachusetts Minimum Wage Act; Breach of Contract, Breach of the Implied

documents and information that have either already been provided to the Defendants, are irrelevant to the parties' claims and defenses, less intrusive sources provide the information Defendants claim they need and the requested information is overly broad as to time. Smith has offered reasonable alternative discovery sources and has already provided documents which the Defendants assert they need. Invasive discovery, such as the production of tax returns, is disproportionate to the needs of this case and an invasion of Smith's privacy and that of his spouse, who is not a party to this case.

The Employers also seek irrelevant information pertaining to Smith's other sources of income. Prior to joining Fortify, Smith opened a company called Smith Company Disability, Inc. ("SCDI") to collect premium renewals and occasional future purchase options for existing policies he had received as partial consideration for the sale of his late father's company, The Smith Companies, Ltd. Smith has already provided an interrogatory response stating that SCDI did not contract with any new producers or do any sales or marketing while he was employed by Fortify. *See* Plaintiff's Supplemental Objections and Answers to Defendants' First Set of Interrogatories, No. 12, attached as Exhibit A.

Smith has also offered to provide SCDI's 1099 forms for the period while he worked at Fortify (June 2016 to April 2023) and after he was terminated. Defendants insist on the production of both his individual and personal tax returns. Smith opposes the production of his personal and SCDI's tax returns. Smith has already provided a copy of any insurance company contracts SCDI entered into during the period after he was terminated. SCDI documents before Smith was hired by the Employers are irrelevant to this case.

The Employers' Motion must be denied in its entirety for the reasons discussed herein.

---

Covenant of Fair Dealing, unjust enrichment; an accounting of commissions due to Smith; and failure to keep proper payroll records under Massachusetts law.

## Relevant Factual Background

Smith worked for the Employer as an independent contractor in Quincy, Massachusetts from June 16, 2016, until he was terminated on April 10, 2023, in retaliation for his many wage complaints. The Employer's classification of Smith as an independent contractor violated the Massachusetts Independent Contractor Statute. M.G. L. Chapter 149, § 148B.

The individual Defendants own and operate a wholesale life and disability insurance business in Connecticut which acts as a Brokerage General Agent for multiple life and disability insurers throughout the United States. Smith was hired to engage with producers (retail insurance salespeople) to encourage them to book policies through the Employer and, to a limited extent, to assist them in selling insurance products to consumers. The producers and the Employer were paid commissions by the insurance companies. This included renewal commissions which were typically paid automatically by the insurers to the Employer.[3]

Pursuant to the Agreement between Smith and Fortify, Smith received an escalating percentage of commissions paid to the Employer for his booked policies based on the dollar value of his bookings. *See* Agreement, attached as <u>Exhibit B</u>; *see also* Amended Complaint at ¶¶ 34-36. Smith's commissions escalated from 60% to 75% based on the total commissions he booked for his Employer. *See* <u>Exhibit B</u>. The Agreement explicitly states that Smith's commissions were <u>vested from his first sale</u>, meaning that each of his commission counted toward the financial thresholds Smith needed to attain the next commission tier. Exhibit B; Amended Complaint at ¶ 37. Contrary to the Employer's allegation, the Agreement does not say that Smith's vested commissions began anew each calendar year. This would make no sense in the context of the Agreement.

---

[3] Smith/SCDI were a sub-unit under the Employer for the Principal Insurance Company. Smith/SCDI were paid directly for Smith's share of renewal premiums and the balance was paid to the Employer.

The Employer's violated the Massachusetts Wage Act and the FLSA by failing to pay Smith's commissions and renewals in full and on time. Although Smith was a non-exempt employee within the meaning of the FLSA, he was paid monthly and then quarterly, without his written permission. *See* M.G.L. c. 149, § 148; 29 U.S.C. §§ 206 and 215(a)(2). Non-exempt employees must be paid weekly or bi-weekly under the Wage Act. *Id.*

Moreover, Smith received no wages other than commissions. *Amended Complaint at* ¶ 51. Under Massachusetts and federal law, he earned hourly wages from the Employers. *See* M.G.L. Chapter 149, § 148; 29 U.S.C. §§ 206 and 215(a)(2); *see also* Amended Complaint at ¶ 51. The Employers never paid Smith any hourly wages, a clear violation of the Wage Act and FLSA.

Over time, it became apparent to Smith that the Employers were not paying Smith at the escalated commission rates and for all the policies he had booked through producers and himself. The Employers unilaterally decided that the threshold for escalating Smith's commissions would begin at zero on January first of each calendar year, which meant Smith was not paid what he was due per the Agreement. *See* Email from S. Wilson dated August 5, 2022, attached as Exhibit C. Further, the Employer has not credited Smith for policy renewals which are quite valuable.[4]

Beginning in or around June 2022, Smith repeatedly complained to the Defendants about not being paid properly and asked the Employers to review their records to ascertain what Smith had earned and been paid, was owed and unpaid, and to share the underlying information with him. *See* Amended Complaint at ¶ 77. The Defendants continually delayed for almost one year until the Employers summarily fired Smith, claiming that Fortify was losing money processing his

---

[4] Much of Smith's business was with Petersen Insurance Underwriters, which is the United States agent for Lloyd's of London. Unlike domestic life and disability insurers, Lloyd's policies are written for a term of years, such as three or five years, and then renewed for another defined term. Domestic insurers pay "renewal" premiums over the term of the policy.

bookings.[5]

The Employers also seek irrelevant information pertaining to Smith's other sources of income. Prior to joining Fortify, Smith opened SCDI to process renewals and the occasional exercise of future purchase options by insured for existing disability policies which he had received upon the sale of his late father's company, The Smith Companies, Ltd. Smith has already provided an interrogatory response stating that SCDI did not contract with or market to any producers, insureds, or insurers while he was employed by Fortify. *See* Exhibit A.

The parties met and conferred during August 2024 and two additional discovery conferences in October 2024, followed by a further discovery conference with the Court in December 2024. As noted above, Smith offered to produce Form 1099s reflecting SCDI's income while he was employed by Fortify and after his employment was terminated and explained that Smith did not track his working time. Nevertheless, the Defendants have brought this Motion, in which they ignore the points raised by Smith's counsel at the prior discovery conferences and keep pushing Smith to produce non-existent documents.

### Discovery Requests at Issue

**1.     Mr. Smith's Resume**

The Plaintiff has produced a copy of his resume. This portion of the Motion is therefore moot.

**2.     Mr. Smith's and SCDI's Tax Returns**

In recognition of how invasive it is to require the production of tax returns, courts have limited such orders to situations in which only necessary information is clearly relevant to the parties' claims and defenses, and the information is not readily available in another form. "Tax returns are discoverable if '(1) they are relevant to the action and (2) the information which they contain is

---

[5] The Employer provided Smith with a Fortify VOIP telephone number, company email and Google mail account, all of which were inexpensive. The overall business expenses were devoted to processing C. Wilson's bookings, since he brought in the vast majority of Fortify's revenue.

otherwise unobtainable.'" *Jiajing (Beijing) Tourism Co. v. AeroBalloon USA, Inc.*, 2022 U.S. Dist. LEXIS 16597, at \*7 (D. Mass. Jan. 31, 2022) (citation omitted) (denying a motion to compel tax returns where bank and credit card statements had been produced); *see also Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass Sep. 20, 2001) (denying motion to compel tax returns "given (1) the tenuous link between the returns and the purpose to which [the moving party] would put them and (2) the availability of similar information through alternative means[.]"). Despite these limitations, the Employers seek ten years[6] of tax returns from both Smith (and his spouse) and SCDI.

Defendants rely heavily on *Viscito v. Nat'l Planning Corp*, 2019 U.S. Dist. LEXIS 181635 (D. Mass. Oct.21, 2019). But *Viscito* stands for the proposition that "income tax returns are discoverable where the returns are relevant to claims of the parties **and the information is not readily available in another form.**" *Id.* at \*3 (emphasis added). The information the Employers seek is readily available in other forms, including SCDI's 1099 forms and by propounding interrogatories to Smith. Thus, the Employers' reliance on *Viscito* is misplaced. *See also Elliston v. Wing Enters.,* 2017 U.S. Dist. LEXIS 179340 at \*5 (D. Mass. October 30, 2017, Cabell, M.J.) (Motion to compel tax returns denied because plaintiff agreed to produce relevant information from other sources and defendant failed to meet the "weighty burden required to obtain such personal information"); *Fierro v. Gallucci*, 2009 U.S. Dist. LEXIS 17693 at \*4-5 (E.D. NY Mar. 24, 2010) ("Plaintiffs must establish that they have a compelling need for defendants' tax returns because the information is not readily available from a less intrusive source.").

The Employers identify three reasons why they need the information reflected in these tax returns:

> (1)  they lack dollar figures to calculate or verify the amount of damages sought for (a) reimbursement of payroll and other taxes, (b) medical insurance and sick time, and (c)

---

[6] Requesting ten years of tax returns is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

back pay, lost wages, and lost benefits;

(2)  the extent of the plaintiff's business interests outside of Fortify is relevant to the determination of whether the plaintiff is economically dependent on Fortify for purposes of his FLSA claim; and

(3)  reiterating (1)(c), they claim that the tax returns are relevant to the plaintiff's claim for lost wages and benefits.

To the extent that any of this information is contained in Smith's personal tax returns, or those of SCDI, none of it is found solely in those sources. The information is readily available in other forms that the Plaintiff has repeatedly offered to provide. Some information may be sought by Defendants propounding simple interrogatories to Smith. Smith is willing to supplement his prior interrogatory answers to clarify that during his career he has been involved in no other insurance business of the same nature as Fortify, other than working for Fortify, The Smith Companies, Ltd., and SCDI.[7] This, and the other issues raised by the Employers, do not merit production of Smith or SCDI's tax returns.  The demand for returns is ironic, given the Employer's steadfast refusal to produce Fortify's tax returns.

Specifically, Smith already has provided some of the relevant information in interrogatory responses.  As a matter of logic, the Plaintiff's *lost* wages will not appear in his tax returns; those would be calculated based on his prior earnings (which are both known to the Employers and reflected in Fortify's 1099 forms, which the Employers have in their possession). Moreover, the Employer's share and Smith's share of payroll taxes are easily calculated by the same company that processes Fortify's payroll or by its accountant, Thomas Smith, CPA. Or the Employers could ask Smith to disclose the amount of payroll taxes he paid while working for Fortify and his health insurance premiums through a simple interrogatory.

Further, the Employers have in their own records the amount they deducted from Smith's

---

[7] Exhibit A, Interrogatory No. 12, already states this clearly.

commissions for overhead expenses they unlawfully charged to Smith. Despite addressing these issues at the discovery conference with the Court on December 13, 2024, the Employers have failed to explain why the 1099 forms and supplemental interrogatories are inadequate.[8]

Further, Smith has already disclosed to the Employers that he received consideration upon the sale of The Smith Companies, Ltd. That is his confidential business information. He has used that money for investments and other purposes, none of which are relevant to any of the claims or defenses in this case. As noted, Smith has answered an interrogatory in which he affirmed that he has not done sales or marketing except for Fortify during his employment. Again, he is willing to produce SCDI 1099 forms which will show a small amount of income from renewal premiums and the occasional exercise by an insured of his policy options.

### 3. SCDI's Contracts and Agreements

As noted above, SCDI did not generate <u>new</u> policies while Smith worked for Fortify.[9] This has already been answered by Smith in his signed interrogatory answer. *See* <u>Exhibit A</u>. SCDI's contracts, which pertain to disability insurance renewal premiums from former clients of The Smith Companies, Ltd., will shed no light on the amount of revenue earned by Smith while he worked for the Employers, and thereafter for mitigation purposes.[10] The SCDI 1099 forms show the small amount of renewal and option revenue collected by SCDI while Smith was employed by Fortify and thereafter. Smith has already agreed to produce these documents.

Nor will the contracts or agreements reveal the degree to which Smith was economically

---

[8] Significantly, Smith has been unable to calculate his commission damages because the Employer have steadfastly refused to produce the relevant documents to him. This is one of the subjects to be raised in Smith's soon to be filed Motion to Compel Discovery.

[9] On rare occasions, an existing SCDI renewal client exercised an option to increase his insurance coverage. This revenue is reflected in the SCDI 1099 forms.

[10] Smith has already produced and will continue to produce documents concerning his search for a new job.

dependent on Fortify; while the aggregate amount of income that Smith derived from SCDI might arguably have a bearing on that issue, that figure is easily ascertained from the SCDI 1099s that Smith has agreed to produce. The Employers are on a fishing expedition to find confidential business information about SCDI, which is irrelevant to this case. The fact that Smith received consideration for his agreement to sell his share of The Smith Companies, Ltd. is irrelevant. There is no reason why the Employers need the agreements or contracts that SCDI entered in 2015 when The Smith Companies, LTD sale closed and he opened SCDI, and before he began working for Fortify. The information the Employers seek does not answer any relevant question in this case.

Finally, it would take considerable time and effort for Smith to gather all the renewal agreements dating back to 2016, when he began working for Fortify. Some of them are in the sole possession of the successor company which now owns and operates the former Smith Companies, Ltd. This effort is unnecessary because the information the Employers need is not who SCDI did business with, but what he earned from SCDI while employed by Fortify. That information is found in the 1099 forms.

**4. Licensed Advisors (Producers) Smith Has Allegedly Continued to Do Business with and the Policy Names**

This is another fishing expedition by the Employers. Smith brought to Fortify all the producers with whom he had developed relationships while at The Smith Companies, Ltd. He also brought to Fortify his strong relationship with the Oppenheimer Insurance Company, which proved quite valuable to the Employer. The Employer's demand for this information must be denied because their demand is irrelevant and overly broad.

First, the Employer is not entitled to this information. There is no counterclaim for breach of a non-compete or non-solicit. The identity of Smith's producers is irrelevant to any claim or defense in this case. The Employers want to disrupt Smith's long-standing relationship with producers Smith had established over many years before he worked for Fortify. Second, the Agreement between Smith

and Fortify clearly states that Smith's business remains his own. That includes the producers who are Smith's clients. *See* Agreement at 1-2. Third, the names of any policies and insureds for whom Smith has written insurance after being fired by the Employers are irrelevant to mitigation. The only things the Employers have a right to know are how much Smith earned after his employment was terminated and whether he has been mitigating his damages by looking for work. Smith has provided documents proving his job search. Finally, Smith has already produced the handful of insurance company agreements that SCDI has entered into after he was terminated by Fortify. Smith requests that the Court deny this aspect of the Motion.

### 5. Hours Worked

Smith believed he was an independent contractor while working for the Employer. He is a layperson and had no knowledge of the independent contractor statute until after he was terminated. As a result, Smith did not keep track of the hours he worked on a weekly basis for Fortify and is unable to provide the information sought by the Employers. Smith has signed an interrogatory on this subject and his counsel discussed it with Defendants' counsel on at least two occasions. *See* Plaintiff Jonathan Smith's Objections and Answers to Defendants' Second Set of Interrogatories, attached as <u>Exhibit D</u>, Nos. 5 and 6. Nonetheless, Smith is willing to sign a supplemental interrogatory response to clarify that he does not have the documents that the defendants seek, but he is unable to do more. *See Swenson v. Mobilityless, LLC*, 2022 U.S. Dist. LEXIS 114814 at *13 ("The court will not order the production of documents that do not exist."), *quoting Viscito v. Nat'l Planning Corp*, 2019 U.S. Dist. LEXIS 181635 at *6) (D. Mass. Oct. 21, 2019). It was the Defendants' obligation, as Smith's employer, to keep track of his hours and overtime.

**CONCLUSION**

WHEREFORE, the Plaintiff respectfully requests that this Court deny the Defendants' Motion to Compel in its entirety.

Respectfully submitted,

/s/ Valerie C. Samuels
Valerie C. Samuels, BBO #548539
Joshua A. McGuire, BBO #651877
SASSOON CYMROT LAW, LLC
84 State Street
Boston, MA 02109
(617) 720-0099
vsamuels@sassooncymrot.com
jmcguire@sassooncymrot.com

Dated: February 27, 2025

**CERTIFICATE OF SERVICE**

I, Joshua A. McGuire, hereby certify that on February 27, 2025, I caused a copy of the foregoing document to be served electronically through the ECF system, which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Valerie C. Samuels
Valerie C. Samuels

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN SMITH )<br><br>           Plaintiff )<br><br>FORTIFY INSURANCE GROUP, INC., )<br>COURTNEY WILSON AND SUSAN )<br>WILSON )<br><br>           Defendants ) | Civil Action No. 1:23-cv-11482-DLC |

## PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO DEFENDANTS' FIRST SET OF <u>INTERROGATORIES</u>

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Plaintiff, by and through his undersigned counsel, supplements his answers to the following Interrogatories as set forth herein.

## <u>GENERAL OBJECTIONS</u>

The following General Objections apply to and are expressly made part of the Plaintiff's specific response to each Interrogatory.

1. The Plaintiff generally objects to these Interrogatories, and to every definition and instruction therein, to the extent that they seek to impose burdens greater than those imposed by the Federal Rules of Civil Procedure, as interpreted and supplemented by the local court rules.

2. The Plaintiff generally objects to these Interrogatories, and the definitions and instructions therein, to the extent that they call for the disclosure of any document or communication that is privileged, was prepared in anticipation of litigation or for trial, and/or otherwise constitutes attorney work product or is immune from discovery. Inadvertent identification or production of any such document or communication shall not constitute a waiver of any privilege or protection with

respect to the subject matter thereof or the information contained therein and shall not waive the right of the Plaintiff to object to the use of any such document or communication (or the information contained therein) during this or any subsequent proceeding.

3.      The Plaintiff generally objects to these Interrogatories to the extent that they require the identification of documents or communications dated prior to March 1, 2016, on the grounds that such Interrogatories are overly broad, unduly burdensome, and not relevant or proportional to the needs of the case. Notwithstanding this objection, and without prejudice thereto, certain responses may, but not necessarily will, identify documents dated prior to March 1, 2016, to the extent that the Plaintiff has knowledge of their existence.

4.      The Plaintiff generally objects to these Interrogatories to the extent that they require identification of documents not within the Plaintiff's possession, custody, or control.

5.      The Plaintiff generally objects to these Interrogatories to the extent that they call for the identification or disclosure of the contents of any document or communication containing confidential business information and/or personal information about individuals who are not parties to this action. The Plaintiff will produce such information subject to an appropriate protective order to be agreed upon by counsel.

6.      All responses are based on Plaintiff's current knowledge and reasonable belief, and the Plaintiff reserves the right to amend or supplement these Objections and Responses.

7.      The Plaintiff objects to the characterization of his relationship with Fortify as an "affiliation." Plaintiff was employed by Fortify Insurance Group, Inc. ("Fortify") and should have been classified as a Fortify W-2 employee at all relevant times.

## <u>SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES</u>

**<u>Interrogatory No. 12</u>**:

Identify and describe your work history, whether as an employee, independent contractor

and/or owner of any business, from January 1, 2014 to the present, including, but not limited to in Your answer, the name of the employer, contracting party, and/or business, dates of affiliation, a description of Your responsibilities, whether You are still an employee, independent contractor and/or owner of any business described in Your answer to this Interrogatory and, if not, explain why not.

**Supplemental Answer to Interrogatory No. 12:**

The Plaintiff objects to this interrogatory because it seeks information which is not proportional to the needs of this case, overbroad, unduly burdensome, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Without waiving the General Objections and these specific objections, the Plaintiff states that he was an owner of The Smith Companies, Ltd. from approximately June 2012 to February 2015. As an owner, Mr. Smith collaborated with the C-suite team, assisted in the implementation of new business strategies, and worked to reduce overhead and increase profits, among other tasks. Mr. Smith sold his interest in The Smith Companies, Ltd. in or around February 2015.

In or around February 2015, Mr. Smith incorporated Smith Company Disability, Inc. ("SCDI") as its sole owner and President. From approximately February 2015 until he became employed by Fortify on or about June 16, 2016, Mr. Smith serviced disability insurance policies which he had retained upon the sale of The Smith Companies, Ltd. He was also exploring investments in non-insurance related businesses. Mr. Smith was not marketing or pursuing any new insurance producers or insureds from February 2015 until he became employed by Fortify and then did so exclusively for Fortify's benefit. Servicing the existing retained disability policies requires very minimal work by Mr. Smith on a random basis. He also received a small amount of money each year from The Smith Companies, Ltd., based on renewal commissions as part of the sale of his

interest in that company.

On or about June 16, 2016, Mr. Smith began working for Fortify until Defendants abruptly terminated his employment on or about April 10, 2023. Mr. Smith was Fortify's Chief Operating Officer and a Disability Specialist, among other titles assigned to him by Fortify and Courtney Wilson while he was employed by Fortify. At some point, Mr. Smith was no longer Fortify's Chief Operating Officer. According to the agreement dated June 16, 2016, between Mr. Smith and Fortify, Mr. Smith's services for Fortify were to be performed exclusively for Fortify.

The agreement states that Mr. Smith was responsible for "generating new business by facilitating relationships with appropriately licensed Insurance & Financial Professionals throughout the country on behalf of Fortify Insurance Group as well as recruiting and training new sales associates." As contemplated by Paragraph 5 of the agreement, Mr. Smith continued to service the retained Smith Company, Ltd. insurance policies on a random, occasional basis when an insured had a question or problem.

While employed by Fortify, Mr. Smith did not engage in any insurance sales and marketing activities on behalf of SCDI. His insurance marketing and sales activities were performed exclusively for the benefit of Fortify. In fact, Mr. Smith purchased his own insurance policy through Fortify which meant that Fortify would likely have received a commission for this policy.

After Fortify terminated his employment, Mr. Smith has continued to occasionally service the retained Smith Company, Ltd. policies. He has applied for multiple positions with other companies and continues to do so. Mr. Smith signed a Special Marketing Producer Commission Agreement with Petersen International Underwriters after Fortify terminated his employment. Relevant documents concerning Mr. Smith's mitigation efforts and the Petersen agreement will be produced to the Defendants.

**Interrogatory No. 14**:

Please identify and itemize all damages You seek in this Action, including, but not limited to, all calculations of alleged damages and the calculations alleged in Paragraph 33 of the Complaint.

**Supplemental Answer to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory because it seeks confidential information from Plaintiff's expert witness which is not required to be disclosed at this time.

Without waiving the General Objections and these specific objections, the Mr. Smith states that at this time, Plaintiff cannot accurately determine the full amount of his earned, unpaid commissions, renewals, and escalated commissions because the documentation which contains this information is in the sole possession, custody and control of Defendants and possibly their CPA, Thomas Smith. The Plaintiff will provide his expert disclosure in due course after Defendants have produced their contemporaneous business records, relevant commission schedules for 2016 to the present, and other documents necessary to accurately calculate the Plaintiff's damages.

Mr. Smith has been unemployed since the Defendants terminated his employment on April 16, 2023, in retaliation for his ongoing complaints about Defendants not paying him on time and in full. Moreover, the Defendants failed to properly escalate Smith's commission percentage, and at least once, the Defendants changed the allocation of commissions from what was specified in the agreement to benefit themselves. They also required Smith to pay a portion of Fortify's overhead for events sponsored by Fortify and did not pay his expenses as required by the agreement. Susan Wilson apparently failed to accurately calculate Mr. Smith's commissions because she was unaware of the agreement's specific terms and did not review it when calculating the amounts due Mr. Smith.

Mr. Smith also seeks damages from the Defendants for his lost income during his period of unemployment. Mr. Smith also paid the employer's share of payroll taxes during his employment with Fortify; these payroll taxes were Fortify's sole responsibility. Plaintiff paid for his family's

5

health insurance because Fortify misclassified him as an independent contractor, and Plaintiff did not receive the benefit of the Massachusetts Earned Sick Time Law and all other benefits available to Fortify employees. In addition, Fortify retained the business previously written by Mr. Smith which was transferred to Fortify during his employment with Fortify.

Further, Defendants violated M.G.L. Chapter 149, § 148, when they paid Plaintiff on a monthly, quarterly and also random basis, well after his commissions were due and payable and arithmetically determinable. To the extent that Defendants unilaterally decided to pay Mr. Smith on a monthly, then quarterly basis, and random basis, all of these payments were late. The Defendants routinely paid Plaintiff late even when he was paid the full amount of his earned commissions. Massachusetts law required Defendants to pay Mr. Smith (as a non-exempt employee) on a weekly or bi-weekly basis for all the hours and parts thereof he worked on Fortify's behalf as well as overtime. Mr. Smith is entitled to recover treble damages for all late and incomplete wages.

Mr. Smith reserves his right to receive treble damages, and his attorneys' fees, costs, and expenses pursuant to M.G.L Chapter 149, §150, in the event of a favorable judgment on his statutory claims.

The Plaintiff will timely provide his expert disclosure when Fortify produces all documents necessary for Plaintiff's expert to accurately calculate his damages.

**Sworn to under penalties of perjury on this 26th day of November 2024**

_____
Jonathan Smith

Objections by
Attorney for Plaintiff
JONATHAN SMITH

_/s/ Valerie C. Samuels_
Valerie C. Samuels BBO #548539
Sassoon Cymrot Law, LLC

84 State Street
Boston, MA 02109
617-720-0099
vsamuels@sassooncymrot.com


Dated: November 26, 2024

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on November 26, 2024, I served the foregoing Plaintiff's Supplemental Objections and Answers to Defendants' First Set of Interrogatories on Defendants' counsel of record, by e-mail at ssegal@verrill-law.com and rbrooks@verrill-law.com.


                    */s/ Valerie C. Samuels*
                    _____
                    Valerie c. Samuels

**EXHIBIT B**



Jonathan Smith
COO – DI Specialist

Dear Jonathan:

The purpose of this letter is to outline the terms between Fortify Insurance Group Inc. (FIG) and Jonathan Smith ("Contractor") to be effective 6/1/2016.


Services—

1-Jonathan Smith agrees to contract with Fortify Insurance Group Inc. in the role of Chief Operating Officer / Disability Specialist. Jonathan Smith will be responsible for generating new business by facilitating relationships with appropriately licensed Insurance & Financial Professionals throughout the country on behalf of Fortify Insurance Group as well as recruiting and training new sales associates. The services that Jonathan Smith provides are to be exclusive to Fortify Insurance Group.


Compensation—

1- Fortify Insurance Group Inc. agrees to pay Jonathan Smith commissions equal to 60% of the Fortify Insurance Group Inc. Brokerage commission based on each case (agent overrides will be split at the same rate between Jonathan Smith & FIG unless otherwise specified using Single Case Agreement). Additionally, any retail cases submitted by Jonathan Smith will be split 60%/40% total commission with Fortify Insurance Group unless otherwise specified using Single Case Agreement).

2- Fortify Insurance Group Inc. agrees to pay Jonathan Smith commissions equal to 70% of the Fortify Insurance Group Inc. Brokerage commission based on each case (agent overrides will be split at the same rate between Jonathan Smith & FIG unless otherwise specified using Single Case Agreement) after total production exceeds $150k. Additionally, any retail cases submitted by Jonathan Smith will be split 70%/30% total commission with Fortify Insurance Group unless otherwise specified using Single Case Agreement).

3- Fortify Insurance Group Inc. agrees to also pay Jonathan Smith commissions equal to 75% of the Fortify Insurance Group Inc. Brokerage commission based on each case (agent overrides will be split at the same rate between Jonathan Smith & FIG unless otherwise specified using Single Case Agreement) after total production exceeds $300k.



Additionally, any retail cases submitted by Jonathan Smith will be split 75%/25% total commission with Fortify Insurance Group unless otherwise specified using Single Case Agreement).

4- All commissions paid to Jonathan Smith will be considered vested from first dollar including renewal compensation

5- All business previously written by Jonathan Smith will be retained and **not** be incorporated into the Fortify Insurance Group business block for servicing. Any adjustments or increase options Jonathan Smith chooses to process through Fortify Insurance Group will be subject to the compensation terms outlined previously.

Covered Expenses and Reimbursements —

Fortify Insurance Group Inc. agrees to cover certain expenses for Jonathan Smith for the purposes of cultivating business on behalf of Fortify Insurance Group to include business cards, presentation materials and the like. Entertainment expenses require prior approval.

All Expenses must be accurately recorded on approved Expense Reimbursement form and must accompany original receipts. Fortify Insurance Group agrees to reimburse Expenses on an expedited basis not to exceed 30 business days.

Term—

1-Term of this agreement is to be no less than 1 year. This contract may be terminated by Fortify Insurance Group Inc. or Jonathan Smith without cause within the term of contract. Should Jonathan Smith terminate the contract before the minimum 1-year term all unearned commission payments made by Fortify Insurance Group Inc. to Jonathan Smith are due and payable within 30 (thirty) days of termination of agreement.



Warranties—

1-Fortify Insurance Group Inc. and Jonathan Smith warrant that they each respectively are free to enter into and fully perform this Agreement. By executing this Agreement, you hereby represent and warrant to Fortify Insurance Group as follows:

(a)     That neither the execution of this Agreement by you nor the performance of your undertakings herein will violate or conflict with or constitute a default under any Agreement or writing of any nature or violate any judgment, decree or order to which you are a party or are bound.

(b)     That you are not now, nor have you, within preceding five (5) years been a party to or subject to any type of Agreement, verbal or written, with any individual or business entity of any type whatsoever (i) which would limit, restrict, impede or affect your undertakings herein, or the performance thereof, in whole or in part; and/or (ii) which could create or result in any type of liability, monetary or otherwise on the part of the Company.

(c)     That the execution of this Agreement by you shall not constitute a breach of any contract, Agreement or undertaking, written or verbal, to which you are a party or otherwisebound.

Covenants Against Competition—

You acknowledge that the services to be rendered to Fortify Insurance Group Inc. have a significant and material value to FIG, the loss of which cannot adequately be compensated by damages alone. In view of the significant and material value to FIG of your services for which FIG has compensated you; you agree that you will not engage, either directly or indirectly, in competition with or solicit any customer, client or account of FIG during your contract term with FIG and **six (6)** months after your contract ends. During your contract term and for a period of **six (6)** months thereafter, you shall not, directly or indirectly, solicit for employment or employ any employee or former employee of FIG without written consent from FIG. This does not include any clients that were previous relationships of Jonathan Smith prior to the signing of this agreement.



Intellectual / Technological Property –

Specific to the web-based technology developed and owned solely by Fortify Insurance Group Inc. you agree that under no circumstances will you share, sell, divulge, demonstrate, etc. any of the intellectual property you will utilize while employed under this contract. You agree to use the technology solely for the purposes of engaging in Insurance Brokerage activities as described in this agreement.

Confidentiality / Compliance -

Additionally it is understood that Fortify Insurance Group Inc. stores sensitive personal data and Jonathan Smith agrees to maintain confidentiality of all data and not to disclose any information for which HIPPA or Authorization to Disclose limitations exist.

Employment / Tax Responsibilities —

1-That you are being retained in the capacity as a Contractor of the Fortify Insurance Group Inc.

2-That you shall be responsible for the payment of any federal, state, or local taxes (as well as unemployment compensation) which may be due with respect to any sums paid to you outside of base salary.

Errors & Omissions / Producer Licenses / Liability Coverage—

1- Fortify Insurance Group Inc. carries an Errors and Omissions insurance policy of which Jonathan Smith will be listed as a covered party. You acknowledge that you are required to familiarize yourself with this policy and act within the required guidelines for coverage.

2- It is the responsibility of Jonathan Smith to maintain in good standing appropriate Resident & Non-Resident Individual Producer licenses necessary to conduct business as outlined in Services section above. Further Jonathan Smith must present and keep current copies of Producer licensing to Fortify Insurance Group Inc. Expenses related to Continuing Education and Licensing fees are the sole responsibility of Jonathan Smith.



3- Employee agrees to keep all necessary Liability Insurance policies in good standing not limited to but including Auto Insurance.

Severability—

If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, such decision shall not affect the validity or enforceability of any of the remaining provisions, which remaining provisions shall continue to have full force and effect.

Entire Agreement—

This Agreement shall constitute the entire understanding of the parties with respect to the subject matter, superseding all prior and contemporaneous promises, agreements and understandings, whether written or oral pertaining thereto.

I look forward to working with you

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective as of the day and year first above written.

**FORTIFY INSURANCE GROUP INC. / EMPLOYER**

DATE: _6/16/16_     BY: _____
                        Courtney Watson, President

**CONTRACTOR-**

DATE: _6/16/16_     BY: _____
                        Jonathan Smith

**EXHIBIT C**



Work-Product Doctrine

**From:** Susan Wilson <susan@fortifyinsurance.com>
**Date:** August 5, 2022 at 11:00:56 AM EDT
**To:** Jonathan Smith <jonathan@fortifyinsurance.com>
**Cc:** CB Wilson <courtney@fortifyinsurance.com>
**Subject: RE: Fortify Aug Overrides**

I forwarded your email to Courtney since I have no record of that comp agreement. I know he was planning to touch base with you but none of our reporting shows that you have reached 300K this year in premium.



**Susan Wilson** | Chief Executive Officer
24 Punch Bowl Drive | Westport, CT 06880
**office:** 203-226-4077 | **direct:** 203-822-8708
**skype:** fortify.insurance | **twitter:** @fortifyins
susan@fortifyinsurance.com | fortifyinsuranc
e.com

Proposal Requests:          illustrations@fortifyinsurance.com
Application Submissions:     applications@fortifyinsurance.com
Underwriting:               underwriting@fortifyinsurance.com
Licensing & Commissions:    licensing@fortifyinsurance.com
Case Placement & Policy Service:  policyservice@fortifyinsurance.com

**From:** Jonathan Smith <jonathan@fortifyinsurance.com>
**Sent:** Friday, August 5, 2022 10:52 AM
**To:** Susan Wilson <susan@fortifyinsurance.com>
**Subject:** Re: Fortify Aug Overrides

Hello Susan,
I have sent you a couple of emails inviting you to have a conversation with me regarding the percentage of the override I am contractually due and I haven't seen a response from

you in 8 days.  The correct percentage would be 75% once I went over $300k of production.  I would like an audit done on my block and compensates accordingly based on my contract.  I am available today if you can connect.

With all that said, the attached statement is incorrect.

Regards,
Jonathan


**Jonathan Smith**
617-501-6154
www.fortifyinsurance.com
**twitter:** @fortifyins
Pardon typos as email sent on the run 🏃

*Click Here to access our secure Request A Proposal System*


On Aug 5, 2022, at 10:24 AM, Susan Wilson <susan@fortifyinsurance.com> wrote:

Hi Jonathan,

Attached please find overrides for your DI cases.  Please allow 7-10 days for payment.

Best Regards,
Susan

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JONATHAN SMITH, | ) | CIVIL ACTION NO.: 1:23-CV-11482-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORTIFY INSURANCE GROUP, INC., | ) | |
| COURTNEY WILSON AND SUSAN | ) | |
| WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF JONATHAN SMITH'S OBJECTIONS AND ANSWERS TO DEFENDANTS' SECOND SET OF INTERROGATORIES

## GENERAL OBJECTIONS

The following General Objections apply to and are expressly made part of the Plaintiff's specific response to each Interrogatory.

1.    The Plaintiff generally objects to these Interrogatories, and to every definition and instruction therein, to the extent that they seek to impose burdens greater than those imposed by the Federal Rules of Civil Procedure, as interpreted and supplemented by the local court rules.

2.    The Plaintiff generally objects to these Interrogatories, and the definitions and instructions therein, to the extent that they call for the disclosure of any document or communication that is privileged, was prepared in anticipation of litigation or for trial, and/or otherwise constitutes attorney work product or is immune from discovery. Inadvertent identification or production of any such document or communication shall not constitute a waiver of any privilege or protection with respect to the subject matter thereof or the information contained therein and shall not waive the right

1

of the Plaintiff to object to the use of any such document or communication (or the information contained therein) during this or any subsequent proceeding.

3.      The Plaintiff generally objects to these Interrogatories to the extent that they require the identification of documents or communications dated prior to March 1, 2016, on the grounds that such Interrogatories are overly broad, unduly burdensome, and not relevant or proportional to the needs of the case. Notwithstanding this objection, and without prejudice thereto, certain responses may, but not necessarily will, identify documents dated prior to March 1, 2016, to the extent that the Plaintiff has knowledge of their existence.

4.      The Plaintiff generally objects to these Interrogatories to the extent that they require identification of documents not within the Plaintiff's possession, custody, or control.

5.      The Plaintiff generally objects to these Interrogatories to the extent that they call for the identification or disclosure of the contents of any document or communication containing confidential business information and/or personal information about individuals who are not parties to this action. The Plaintiff will produce such information subject to an appropriate protective order to be agreed upon by counsel and in accordance with applicable law.

6.      All responses are based on the Plaintiff's current knowledge and reasonable belief, and the Plaintiff reserves the right to amend or supplement these Objections and Responses.

7.      The Plaintiff objects to the characterization of his relationship with Fortify as an "affiliation." Plaintiff was employed by Fortify and should have been classified as a W-2 employee of Fortify.

8.      The Plaintiff objects to Defendants' Second Set of Interrogatories to the extent they seek disclosure of expert opinions and other information generated by or at the request of Plaintiff's consulting and/or testifying experts prior to the exchange of expert reports and prior to the time for expert discovery as set forth in the Court's Scheduling Order.

9.    The Plaintiff objects to Defendants' Second Set of Interrogatories, Definition 11 to the extent it seeks personal policyholder information protected by M.G.L. Chapter 214, § 1B, and documents which include, but not limited to, policyholders' Social Security number, birth date, address and telephone numbers, financial information, as well as any medical, psychiatric or psychological information of any insured or prospective insured protected by HIPAA.

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

### Interrogatory No. 1:

Identify each and every lawsuit and/or legal action to which You, and/or any entity owned or controlled by You (including, but not limited to, Smith Company Disability, Inc.), have been a plaintiff, complainant, defendant, and/or respondent, including, but not limited to, any lawsuits and/or legal actions involving any of Your family members and/or any entity owned or controlled by Your family members (including, but not limited to, Timothy Smith, The Smith Companies, Capitas Financial, etc.). For each lawsuit and/or legal action identified, identify the court and/or administrative agency where the lawsuit or legal action was filed, the subject matter or nature of the lawsuit or legal action, the docket number of the lawsuit or legal action, the year the lawsuit or legal action was filed, and the outcome of the lawsuit or legal action.

### Answer to Interrogatory No. 1:

Plaintiff objects to this Interrogatory to the extent it could be construed as seeking information that is confidential or privileged including, but not limited to, pursuant to the attorney-client privilege, work-product doctrine, and the right to withhold any documents prepared in anticipation of litigation or for trial. Plaintiff further objects to this Interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, seeks information that is irrelevant to any party's claim or defense, and is

disproportionate to the needs of this case.

Subject to and without waiving the foregoing General Objections and the specific objections, Plaintiff states that neither he nor SCDI was a party to any lawsuit, other than the instant case in which Smith is the sole Plaintiff.

**Interrogatory No. 2:**

Identify each and every advisor client with whom You have engaged in business transactions and/or communicated with since Your affiliation with Fortify ended. For each advisor client, identify the substance of the transaction and/or communication and the date of the transaction and/or communication.

**Answer to Interrogatory No. 2:**

Plaintiff objects to this Interrogatory to the extent it could be construed as seeking information that is confidential or privileged including, but not limited to, pursuant to the attorney-client privilege, work-product doctrine, and the right to withhold any documents prepared in anticipation of litigation or for trial. Plaintiff further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably likely to lead to the discovery of admissible evidence, seeks documents and/or information that is irrelevant to any party's claim or defense and not proportional to the needs of the case. Plaintiff also objects to this Request to the extent it is vague, unclear, and/or ambiguous.

**Interrogatory No. 3:**

Identify all Brokerage General Agent ("BGA") and/or Sub General Agent ("Sub GA") contracts You have entered into since Your affiliation with Fortify ended.

**Answer to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory to the extent it could be construed as seeking information that it is overly broad, unduly burdensome, and/or not proportional to the needs of the case.

4

Subject to and without waiving the foregoing General Objections and the specific objections, Plaintiff states that, since Fortify terminated his employment, SCDI has entered into an appointment contract with Petersen International Underwriters, Inc.

**Interrogatory No. 4:**

Identify all cases You have brokered since Your affiliation with Fortify ended.

**Answer to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory to the extent it could be construed as seeking information that is confidential or privileged including, but not limited to, pursuant to the attorney-client privilege, work-product doctrine, and the right to withhold any documents prepared in anticipation of litigation or for trial. Plaintiff further objects to this Request on the grounds that it is overly broad, unduly burdensome, and/or not proportional to the needs of the case. Plaintiff also objects to the production of personal policyholder information, protected by M.G.L. Chapter 214, § 1B, and including, but not limited to, policyholders' Social Security number, birth date, address and telephone numbers, financial information, as well as any medical, psychiatric or psychological information of any insured or prospective insured that is protected by HIPAA.

**Interrogatory No. 5:**

Identify all Documents, records, or other materials You intend to rely on in support of Your allegation in Paragraph 69 of the Amended Complaint that You "worked more than 40 hours per week in some workweeks covered by this Complaint."

**Answer to Interrogatory No. 5:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome and seeks information protected by the attorney-client privilege, the work product doctrine, and the right to withhold any documents prepared in anticipation of litigation or for trial.

Subject to and without waiving the foregoing General Objections and these specific

objections, Plaintiff states that it was Fortify's legal obligation pursuant to M.G.L. Chapter c. 151 and 454 C.M.R. 27.07(1), to keep track of all hours Plaintiff worked during each work week while Mr. Smith was employed by Fortify. Further answering, Plaintiff states that he was available to producers whenever they needed him, and worked as needed to make sure policies were purchased and paperwork completed, including on evenings, nights and weekends.

**Interrogatory No. 6:**

Identify which workweeks during Your affiliation with Fortify that You allege You worked more than 40 hours.

**Answer to Interrogatory No. 6:**

Plaintiff objects to this Interrogatory as unduly burdensome and seeks information protected by the attorney-client privilege, the work product doctrine, and the right to withhold any information prepared in anticipation of litigation or for trial.

Subject to and without waiving the foregoing General Objections and these specific objections, Plaintiff states that it was Fortify's legal obligation pursuant to M.G.L. Chapter 151 and 454 C.M.R. 27.07(1), to keep track of all hours Plaintiff worked during each work week while Mr. Smith was employed by Fortify. Further answering, Plaintiff states that he was available to producers whenever they needed him, and worked as needed to make sure policies were purchased and paperwork completed, including on evenings, nights and weekends.

**Interrogatory No. 7:**

Identify each and every account You allege that You and/or Smith Company Disability, Inc. transferred to Fortify when You began Your affiliation with Fortify.

**Answer to Interrogatory No. 7:**

Plaintiff objects to this Interrogatory as unduly burdensome. Plaintiff also objects to this Interrogatory on the grounds that the information requested is as available to Fortify as it is to Plaintiff.

Without waiving the General Objections or the specific objections, Plaintiff incorporated his Petersen International Underwriting ("PIU") business into Fortify and re-wrote PIU renewal policies while he was employed by Fortify. Plaintiff also successfully introduced Oppenheimer to Fortify based on his prior relationship with Oppenheimer. In addition, Plaintiff brought all his insurance agents/producers to Fortify. The PIU information in contained on a list Plaintiff provided to Fortify before his employment was terminated. Fortify continues to receive commissions from Smith's PIU business.

Sworn to under penalties of perjury on this 23 day of September 2024.

_____
Jonathan Smith

Objections By:

Attorney for Plaintiff
JONATHAN SMITH
*/s/ Valerie C. Samuels*
Valerie C. Samuels (BBO #548539)
Sassoon Cymrot Law, LLC
84 State Street
Boston, MA 02109
617-720-0099
vsamuels@sassooncymrot.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2024, I served the foregoing Plaintiff's Objections and Answers to Defendants' Second Set of Interrogatories on Defendants' counsel of record, by e-mail at ssegal@verrill-law.com and rbrooks@verrill-law.com and rbrooks@verrill-law.com.

/s/ Valerie C. Samuels